# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.,**<br>32 E. Washington St., Ste. 1675<br>Indianapolis, IN 46205<br><br>*Plaintiff*,<br><br>*v.*<br><br>**MONICA HOLMAN EVANS,** in her official capacity as Executive Director of the District of Columbia Board of Elections,<br>1015 Half Street SE<br>Washington, D.C. 2003<br><br>*Defendant*. | Civil Case No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff Public Interest Legal Foundation, Inc., by and through counsel, brings this action for declaratory and injunctive relief against Defendant for violations of the Public Disclosure Provision of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507(i)(1).

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), because the action seeks injunctive and declaratory relief under the NVRA.

2.      This Court also has jurisdiction because Plaintiff complied the NVRA's pre-litigation notice requirements and Defendant failed to cure her violation of law in the time the NVRA affords. *See* 52 U.S.C. § 20510(b)(1)-(2).

1

3.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4.      The Public Interest Legal Foundation, Inc. ("Foundation") is a non-partisan, 501(c)(3) public interest organization incorporated and based in Indianapolis, Indiana. The Foundation promotes the integrity of elections nationwide through research, education, remedial programs, and litigation. The Foundation regularly utilizes the NVRA's Public Disclosure Provision and state and federal open records laws that require government records be made available to the public. Using records and data compiled through these open records laws, the Foundation analyzes the programs and activities of state and local election officials in order to determine whether lawful efforts are being made to keep voter rolls current and accurate in accordance with federal and state law, and to determine whether eligible registrants have been improperly removed from voter rolls. The Foundation also uses records and data to produce and disseminate reports, articles, blog and social media posts, and newsletters in order to advance the public education aspect of its organizational mission.

5.      Defendant Monica Holman Evans is the Executive Director of the District of Columbia State Board of Elections. Defendant has been designated as the District of Columbia's chief election official "to be responsible for coordination of State responsibilities under th[e] [NVRA]." 52 U.S.C. § 20509. Defendant is sued in her official capacity only.

## BACKGROUND

### *The NVRA*

6.      The NVRA provides, in relevant part, "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").[1]

7.      As used in the NVRA, "the term 'State' means a State of the United States and the District of Columbia[.]" 52 U.S.C. § 20502(4).

8.      The Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012).

9.      The Public Disclosure Provision is designed to "ensure that election officials are fulfilling their list maintenance duties" and is "available to any member of the public." *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12 (S.D. Fla. Mar. 30, 2018). The Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. Accordingly, election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls." *Id*. at *12-13.

---

[1] The records described by the Public Disclosure Provision are common referred to as "voter list maintenance records."

*The Electronic Registration Information Center*

10.     The Electronic Registration Information Center ("ERIC") "is a non-profit organization with the sole mission of assisting states to improve the accuracy of America's voter rolls and increase access to voter registration for all eligible citizens." Home, https://ericstates.org/.

11.     ERIC is "is managed by a Board of Directors comprised of a representative from each member state – either its chief election official or their designee." ERIC: Summary of Membership Guidelines and Procedures, https://ericstates.org/wp-content/uploads/2019/06/ERIC-Membership-Summary-v20190603.pdf (last accessed Dec. 1, 2021) (hereafter, "ERIC Membership Guidelines").

12.     ERIC "[m]embers pay a one-time membership fee of $25,000" and "annual dues." *Id*.

13.     The District of Columbia has been a member of ERIC since 2012.[2] *See* ERIC 2017 Annual Report at 9, https://ericstates.org/wp-content/uploads/2019/01/FINAL_ERIC_2017_Annual_Report.pdf (last accessed Dec. 1, 2021) (hereafter, "ERIC Annual Report").

14.     All members of ERIC, including the District of Columbia, signed the ERIC "Membership Agreement," which "sets forth the terms and conditions of membership" in ERIC. ERIC Bylaws, Article II, Section 3 (PDF page 4), https://ericstates.org/wp-

---

[2] According to ERIC's website, as of October 2021, the following are members of ERIC: "Alabama, Alaska, Arizona, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, Nevada, New Mexico, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin. The District of Columbia is also a member. (31 states plus D.C.)." FAQs, Which States Are Members of ERIC?, https://ericstates.org/.

content/uploads/2020/02/ERIC_Bylaws_01-2020.pdf (hereafter, "ERIC Bylaws") (last accessed Dec. 1, 2021).

15.     The ERIC Membership Agreement requires the District of Columbia to provide the following to ERIC "every sixty (60) days":

- "(1) all inactive and active voter files" and,

- "(2) all licensing or identification contained in the motor vehicles database."

ERIC Bylaws, Exhibit A (Membership Agreement) at Section 2(b) (PDF page 17).

16.     The District of Columbia must also "use its best efforts to transmit, on a regular basis, data relating to individuals that exists in the records of other agencies within its jurisdiction that perform any voter registration functions, including, but not limited to, those required to perform voter registration pursuant to the National Voter Registration Act[.]" ERIC Bylaws, Exhibit A (Membership Agreement) at Section 3 (PDF page 17).

17.     ERIC "process[es] data that relates to the maintenance of [Members'] voter registration lists and provide[s] regular (at least on a monthly basis) reports to [each] Member." ERIC Bylaws, Exhibit A (Membership Agreement) at Preamble (PDF page 16).

18.     From ERIC, "[e]ach member state receives reports that show voters who have moved within their state, voters who have moved out of state, **<u>voters who have died</u>**, duplicate registrations in the same state and individuals who are potentially eligible to vote but are not yet registered." FAQs, What Reports Do States Receive From ERIC, https://ericstates.org/ (emphasis added).

19.     "The Social Security Death Master File, sometimes referred to as the 'Social Security Death Index,' is used by ERIC to identify voters who have died so that they can be removed from ERIC states' voter rolls." ERIC Annual Report at 6.

20.     The District of Columbia receives reports from ERIC showing registrants who are deceased or likely deceased (hereafter "ERIC Deceased Reports").

21.     When the District of Columbia receives ERIC Deceased Reports, the District of Columbia is required to, "at a minimum, initiate contact with that voter in order to correct the inaccuracy or obtain information sufficient to inactivate or update the voter's record." *Id*. at 5(b) (PDF page 20).

22.     The ERIC Membership Agreement provides that the District of Columbia "has ninety (90) days after the data was sent to initiate contact with at least 95% of the voters on whom data indicating a record was inaccurate or out-of-date … was provided." *Id*.

23.     The ERIC Membership Agreement provides further, "Within ten (10) business days of the ninetieth day, [the District of Columbia] shall provide a written certification to the Executive Director of ERIC that Member has complied or not complied with" the requirements described in paragraphs 21 and 22. *Id*.

24.     "All voter registration list maintenance activity based on information provided by ERIC must be conducted under the strict guidelines of the National Voter Registration Act (NVRA)." ERIC Membership Guidelines, "Membership Requirements."

25.     On information and belief, the District of Columbia uses ERIC Deceased Reports to conduct list maintenance programs and activities required by the NVRA, including cancellation of registrations belonging to deceased individuals. *See* 52 U.S.C. § 20507(a)(4)(A).

26.     ERIC claims it has identified more than 390,000 deceased individuals on its members' voter rolls since 2013. ERIC, List Maintenance, https://ericstates.org/statistics/.

***District of Columbia's Program to Remove Deceased Registrants May Violate Federal Law***

27.     In 2016, the Office of the District of Columbia Auditor ("ODCA") "examined the voter registration policies and practices of the [Board of Elections] and the [Voter Registration Agencies] to determine whether they comply with relevant federal and District voter registration requirements and whether they reflect best practices in election administration nationwide." ODCA, The District of Columbia Voter File: Compliance with Law and Best Practices at 2 (PDF page 4), June 7, 2016, Revised July 26, 2016, *available at* http://dcauditor.org/wp-content/uploads/2018/07/The-District-of-Columbia-Voter-File-Compliance-with-Law-and-Best-Practices_0.pdf (last accessed Dec. 1, 2021) (hereafter, the "ODCA Report").

28.     The ODCA "found that the BOE's compliance efforts lacked effective policies and procedures as well as monitoring and enforcement to ensure the removal of **<u>deceased voter</u>** **<u>records</u>**, duplicate voter records, and correct voter records with inaccurate birth years from the District's voter file, as required." ODCA Report at 4 (PDF page 6) (emphasis added).

29.     The image below—which appears in the ODCA Report—"summarizes [ODCA's] findings of the BOE's compliance with federal and District voter file maintenance requirements. ODCA Report at 4 (PDF page 6).

**Figure 1: Compliance with Federal and District Voter File Maintenance**

| | Requirement | Status |
|---|---|---|
| **Board of Elections** | Conduct Biennial Mail Canvass | Compliant |
| | Correct Inaccurate Birth Years | Non-Compliant |
| | Secure Monthly Reports of Incarcerated Felons from D.C. Superior Court | Non-Compliant |
| | Remove Incarcerated Felons from Voter File | Compliant |
| | Secure Monthly Reports of Decedents from Mayor | Non-Compliant |
| | Remove Decedents from Voter File | Non-Compliant |
| | Remove Duplicate Voter Registrations | Non-Compliant |

30.     Regarding deceased registrants, the ODCA reported the following:

District law requires that the BOE obtain monthly reports from the Mayor regarding decedents 18 years of age or older in the District of Columbia." Federal law requires that local election officials regularly remove the names of voters who are ineligible because of death of the registrant. The BOE provided the Auditor with the names of 243 decedents. We picked a sample of 33 decedents whose dates of death ranged from January 30, 2011, through December 6, 2014. We compared the list of 33 decedents against the District's November 4, 2015 voter list and found that the voter file contained the names of all 33 decedents. The BOE informed the Auditor that the names of the 33 decedents from our sample had not been removed from the voter file because the BOE needed further verification to do so. The BOE, however, was unable to provide evidence that this verification was requested from the Mayor, as required. Accordingly, **we found that the BOE did not comply with the applicable federal and District laws regarding the removal of decedents from the voter list**, as referenced above.

ODCA Report at 6-7 (PDF pages 8-9) (emphasis added).

31.     In its formal response to the ODCA Report, DCBOE acknowledged that with respect to the 33 decedents, it "did not remove these voters from the registry," and had removed only four from the registry as of the date its response was submitted. ODCA Report (PDF pages 25, 25 n.2).

***Criticism of ERIC***

32.     The accuracy of ERIC reports, on which member states rely to remove registrants from the voter rolls, has been criticized. Barbara Arnwine, the former executive director of the Lawyers' Committee for Civil Rights Under Law, stated, "ERIC should be called ERROR because it's that erroneous and that full of flaws." Palast, *ERIC Crow, Jim Crow's liberal twin* (July 15, 2020), https://www.nationofchange.org/2020/07/15/eric-crow-jim-crows-liberal-twin/ (last accessed Dec. 1, 2021).

33.     The Brennan Center for Justice reported the following in a 2019 report:

Wisconsin … reported that although ERIC was helpful in updating more than 25,000 registration addresses in 2017 and 2018, it also resulted in more than 1,300

8

voters signing 'supplemental poll lists' at a spring 2018 election, indicating that they had not in fact moved and were wrongly flagged.

Brater et al., Purges: A Growing Threat to the Right to Vote at 9 (2019),

https://www.brennancenter.org/sites/default/files/2019-

08/Report_Purges_Growing_Threat.pdf (last accessed Dec. 1, 2021).

34.     Marc Meredith, an associate professor in the Department of Political

Science at the University of Pennsylvania, stated,

> While ERIC is usually correct, sometimes they're wrong, and it turns out they're more likely to be wrong in the case where the registrant is a racial or ethnic minority as opposed to a white registrant[.]

Kristen de Groot, Penn Today, The racial burden of cleaning voter rolls (Feb. 24, 2021),

https://penntoday.upenn.edu/news/racial-burden-cleaning-voter-rolls (last accessed Dec. 1,

2021).

35.     A Yale University-led study of ERIC in Wisconsin

> found that at least 4% of people listed as suspected 'movers' cast ballots in 2018 elections using addresses that were wrongly flagged as out of date. Minority voters were twice as likely as white voters to cast their ballot with their original address of registration after the state marked them as having moved, the study showed.

Yale University, Study uncovers flaws in process for maintaining state voter rolls (Feb. 26,

2021), https://phys.org/news/2021-02-uncovers-flaws-state-voter.html (last accessed Dec. 1,

2021).

36.     The Yale study's lead author, political scientist Gregory A. Huber, stated,

> **<u>The process of maintaining states' voter-registration files cries out for greater transparency[.]</u>** … Our work shows that significant numbers of people are at risk of being disenfranchised, particularly those from minority groups. Unfortunately, we don't know enough about the process used to prune voter rolls nationwide to understand why mistakes occur and how to prevent them.

Id. (emphasis added).

***Defendant is Denying the Foundation Access to Voter List Maintenance Records***

37.     On June 24, 2021, the Foundation emailed a letter to the District of Columbia

Board of Elections ("DCBOE"). The letter requested the following records, pursuant to the

NVRA's Public Disclosure Provision:

1.  All "ERIC Data" received from ERIC during the years 2019, 2020, and 2021
    concerning registered voters identified as deceased or potentially deceased.

2.  All reports and/or statewide-voter-registration-system-generated lists showing
    all registrants removed from the list of eligible voters for reason of death for the
    years 2019, 2020, and 2021. Such lists will optimally include unique voter
    identification numbers, county or locality, full names, addresses, and dates of
    birth.

Exhibit A (hereafter, the "Request").

38.     The Foundation defined "ERIC Data" as the "'data included in reports provided

by ERIC' to member states concerning deceased and relocated registrants, and other information

related to voter registration list maintenance." Exhibit A at 1 (quoting ERIC Bylaws, Exhibit A

(Membership Agreement) at Section 4(a) (PDF page 18)).

39.     On June 30, 2021, DCBOE acknowledged the Foundation's Request via email

and stated that the Request would be processed by July 16, unless a 10-day extension was

needed.

40.     On June 30, 2021, DCBOE denied via email the Foundation's request for voter

identification numbers and "other information that is confidential under DCMR 3-510.5."

41.     On July 15, 2021, DCBOE stated via email that DCBOE was seeking a 10-

business-day extension pursuant to D.C. Code § 2-532(d)(1), (d)(2)(A).

42.     On July 16, 2021, DCBOE denied via email the Foundation's request for ERIC

Deceased Reports for the years 2019, 2020, and 2021. Exhibit B (hereafter, the "Denial Letter").

43.     The Denial Letter cited "D.C. Official Code § 2-534(a)(6)" by operation of 15 C.F.R. § 1110 *et seq.* and the federal Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721(a) as the basis for the denial. Exhibit B at 1-2.

44.     DCBOE further cited the "ERIC membership agreement" as authority for denying the Foundation's Request for ERIC Deceased Reports. Exhibit B at 2.

45.     The ERIC Membership Agreement prohibits members from disclosing records they are otherwise legally required to disclosure without first obtaining a court order. ERIC Bylaws, Exhibit A (Membership Agreement) at Section 4(a) (PDF page 15) ("Should a Member receive a request to disclose ERIC Data and determines that it is legally obligated, in whole or in part, to comply with such request, it shall not make the disclosure without first obtaining a court order compelling it to do so, a copy of which shall be provided to ERIC.").

46.     DCBOE granted in part and denied in part the Foundation's second request. DCBOE provided a list of former registrants removed from the District of Columbia's voter roll for the reason of death during the period January 1, 2019 to June 29, 2021. DCBOE denied the Foundation's request for unique voter identification numbers and dates of birth on the grounds that 3 D.C.M.R. § 510.5 prohibits disclosure of that information. Exhibit B at 2.

***The Foundation Notified Defendant that She is Violating the NVRA***

47.     On July 21, 2021, the Foundation notified then-DCBOE Executive Director, and chief election official, Alice P. Miller that she and the DCBOE are in violation of the NVRA for failure to permit inspection of voter list maintenance records as required by 52 U.S.C. § 20507(i). Exhibit C at 1 (hereafter, the "Notice Letter").

48.     The Foundation sent the Notice Letter to Defendant via email and by certified mail through the United States Postal Service.

11

49.     The Notice Letter further notified Defendant that the requested records fall within the scope of the NVRA's Public Disclosure Provision. Exhibit C at 2.

50.     The Notice Letter further notified Defendant that litigation may commence against her if the violation to which she was notified was not cured within 90 days of her receipt of the letter. Exhibit C at 2 (citing 52 U.S.C. § 20510(b)(2)).

51.     The Foundation complied with the NVRA's pre-litigation notice requirements. *See* 52 U.S.C. § 20510(b)(1)-(2).

52.     In the Notice Letter, the Foundation offered to satisfy its request on the following terms:

1.  The DCBOE shall provide to the Foundation the requested "ERIC Data" reports with unique voter identification numbers. The Foundation will consent, in this instance, to the redaction of all data elements contained in the Limited Access Death Master File ("LADMF") and protected by 15 C.F.R. § 1110 et seq., such as SSN dates of birth, SSN dates of death, SSN death locations, and full/partial SSN numbers.

2.  The DCBOE shall resubmit to the Foundation the "DECEASED LIST 010119-062921" Excel file with unique voter identification numbers.

Exhibit C at 3.

***Defendant Did Not Cure Her Violation in the Time the NVRA Affords***

53.     On October 19, 2021, DCBOE responded to the Foundation via email. DCBOE confirmed its denial of the Foundation's request for ERIC Deceased Reports. Exhibit D.

54.     DCBOE also confirmed its denial of the Foundation's request for the voter identification numbers of registrants removed from the voter roll for reason of death. DCBOE provided instead the "voter registration system-generated identification numbers," which DCBOE claims "are unique to each voter." Exhibit D at 3.

55.     The Foundation has received no further correspondence or records from DCBOE or Defendant.

56.     Defendant received notice of her NVRA violation via email on July 21, 2021.

57.     Defendant received notice of her NVRA violation via USPS certified mail on July 26, 2021.

58.     The NVRA afforded Defendant 90 days to cure her NVRA violation, 52 U.S.C. § 20510(b)(2), a period that expired, at the latest, on October 24, 2021.

59.     Defendant did not cure her NVRA violation by October 24, 2021, and as of the date of this pleading, has still not cured her NVRA violation. This action is therefore ripe.

**D.C. Law and Defendant's Actions Are Harming the Foundation**

60.     The requested records are records within the scope of the NVRA's Public Disclosure Provision.

61.     The Public Disclosure Provision authorizes and entitles the Foundation to inspect and duplicate, or otherwise receive the requested records.

62.     Defendant's violation of the NVRA is causing the Foundation to suffer a concrete informational injury because the Foundation does not have records and information to which it is entitled under federal law. *FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.").

63.     By denying the Foundation the ability to obtain the requested voter list maintenance records, Defendant is also impairing the Foundation's ability to, *inter alia*, (1) assess compliance by the District of Columbia with state and federal voter list maintenance

13

obligations and (2) aid the District of Columbia in carrying out its voter list maintenance programs and activities.

64.     Defendant's violation of the NVRA is thus frustrating, impeding, and harming the Foundation's efforts to carry out its organizational mission and thereby injuring the Foundation.

65.     The Foundation intends to request similar records from Defendant in the future.

**COUNT I**
**Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)**

66.     The Foundation realleges the preceding paragraphs as if fully stated herein.

67.     The requested record(s) are in the possession, custody, and control of Defendant.

68.     Defendant is denying the Foundation access to records within the scope of the NVRA's Public Disclosure Provision and thereby violating the NVRA's Public Disclosure Provision.

69.     Neither other federal laws nor federal regulations override the NVRA's Public Disclosure Provision as a matter of law.

70.     D.C. Code § 2-534(a)(6) and any other District of Columbia statute, code, regulation, practice, or policy that conflicts with, overrides, or burdens the NVRA, a federal statute, is preempted and superseded under the Supremacy Clause and the Elections Clause of the Constitution of the United States. Such preempted laws are invalid and unenforceable.

71.     Parties cannot contract to violate federal law. To the extent the ERIC Membership Agreement conflicts with the NVRA's obligation to publicly disclose voter list maintenance records, the ERIC Membership Agreement is void, invalid, and unenforceable.

72.     The Foundation is entitled to relief but has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment:

1.      Declaring that Defendant is in violation of Section 8(i) of the NVRA for denying the Foundation the opportunity to inspect and copy the ERIC Deceased Reports.

2.      Declaring that Defendant is in violation of Section 8(i) of the NVRA for denying the Foundation the opportunity to inspect and copy deceased cancellation reports with voter identification numbers.

3.      Declaring that Section 8(i) of the NVRA preempts and supersedes D.C. Code § 2-534(a)(6) any District of Columbia statute, code, regulation, practice, or policy that prevents the Foundation from inspecting and copying the requested records.

4.      Declaring Section 4(a) of the ERIC Membership Agreement and any other portion of the ERIC Membership Agreement that prevents the Foundation from inspecting and copying the requested records to be void, invalid, and unenforceable as applied to the NVRA.

5.      Ordering Defendant to provide to the requested records to the Foundation.

6.      Permanently enjoining Defendant from denying similar requests now and in the future.

7.      Ordering Defendant to pay the Foundation's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and,

8.      Granting the Foundation further relief that this Court deems just and proper.

Dated: December 6, 2021.

For the Plaintiff Public Interest Legal Foundation:

        /s/ Kaylan L. Phillips
        Kaylan L. Phillips (D.C. Bar #1011583)
        Noel H. Johnson* (Wisconsin Bar #1068004)
        PUBLIC INTEREST LEGAL FOUNDATION
        32 E. Washington St., Ste. 1675
        Indianapolis, IN 46204
        Tel: (317) 203-5599
        Fax: (888) 815-5641

kphillips@PublicInterestLegal.org
njohnson@PublicInterestLegal.org
*Motion for admission pro hac vice forthcoming*

*Attorneys for Plaintiff Public Interest Legal*
*Foundation*